```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MALKY NELKENBAUM,

                    Plaintiff,                              MEMORANDUM AND ORDER
                                                            18-CV-01848
    - against -


CALIBER HOME LOANS, INC.;
SPECIALIZED LOAN SERVICING, LLC;
and GROSS POLOWY LLC,

                    Defendants.
----------------------------------------------------------x
```
GLASSER, Senior United States District Judge:

      Plaintiff Malky Nelkenbaum ("″Malky" or "Plaintiff") brought Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), Real Estate Settlement Practices Act, 12 U.S.C. § 2605 *et seq.* ("RESPA"), and common law breach of contract claims against Defendants Caliber Home Loans, Inc. ("Caliber"), Specialized Loan Servicing, LLC ("SLS"), and Gross Polowy LLC ("Gross Polowy"), (collectively, "Defendants") alleging that they failed to comply with a loan modification agreement and foreclosed on her home. (ECF No. 11, "Am. Compl."). Pending before the Court is Caliber's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 25). For the reasons explained below, the motion is **DENIED**.

## BACKGROUND

      In 2003, Malky and her husband, Efryaim, purchased a home by executing a mortgage loan (the "Mortgage") and promissory note (the "Note"). (Am. Compl. ¶ 11). They both signed the Mortgage, which secured their home as collateral, but only Efryaim executed the Note, which made him personally responsible for repayment of the loan. (ECF No. 29 at 1). At some point, the couple defaulted on both agreements and Caliber became the servicer of the Mortgage. (Am.

1

Compl. ¶ 14-16). In 2014, Malky and Efryaim divorced and Malky received full ownership of the home, where she still resides. (ECF No. 29 at 1).

In 2014, shortly after Caliber became the servicer of the Mortgage, it commenced an action to foreclose the Mortgage by filing a notice of pendency in New York State Supreme Court. (*Id.*). In 2016, while the foreclosure action was still pending, Malky applied to Caliber for the federal Home Affordable Modification Program ("HAMP"), which would have lowered her mortgage payments and waived certain penalty fees. (Am. Compl. ¶ 19). On January 20, 2017, Caliber sent her a letter detailing the program's requirements, which provided, in relevant part,

> [W]e are offering you an opportunity to enter into a conditional Trial Period Plan under the federal Home Affordable Modification Program (HAMP). This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan and permanently modify your mortgage.
>
> [. . .]
>
> **To Accept This Offer**
> You must contact us at (800) 401-6587 or in writing at the address provided below no later than February 3, 2017 to indicate your intent to accept this offer. In addition, you must make your first Trial Period Plan payment by March 1, 2017.
>
> [. . .]
>
> **Make Trial Period Plan Payments**
> To successfully complete the Trial Period Plan, you must make the Trial Period Plan Payments below.
> - First payment: $1,976.04 by March 1, 2017
> - Second payment: $1,976.04 by April 1, 2017
> - Third payment: $1,976.04 by May 1, 2017
>
> [. . .]
>
> **Next Steps**
> - . . . We reserve the right to revoke this offer or terminate the plan following your acceptance if we learn of information that would make you ineligible for the Trial Period Plan.
> - [. . .]

- Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

[. . .]

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(Exhibit C). Malky subsequently timely made all three Trial Period Plan ("TPP") payments. (Exhibit E). On June 30, 2017, after the last TPP payment was made, Caliber sent Malky a letter writing "**Congratulations!** You are eligible for a Home Affordable Modification . . . . To accept this offer, you must sign and return both copies of the Modification Agreement . . . by 07/05/2017." (Exhibit F). The end of the letter also provided

> **"THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

(*Id.*). Malky executed and returned the HAMP Modification Agreement, which characterized her as the "Borrower" and provided that the "Mortgage and Note together" constitute the "Loan Documents" subject to the Agreement. (Am. Compl. ¶ 23; Exhibit G). Notably, one of the conditions of the Agreement was:

> That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, *unless . . . (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement.*

(*Id.*) (emphasis added). On August 14, 2017, Caliber filed an affirmation to cancel the notice of pendency in state court on the grounds that "the case was settled by loan modification." (Exhibit M).

However, sometime after Malky returned the executed Modification Agreement, Caliber sent her another, undated, letter providing for the first time that an "Assumption and Release Agreement" signed by Efryaim was required to "finalize the process." (Exhibit H).[1] Malky was unable to comply with that requirement and Caliber dishonored the loan modification. The subsequent events and actions by the other defendants in this matter need not be considered to determine this motion.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint alleges fraud, the complaint "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

---

[1] Notably, this was the third letter sent to Malky that provided **"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."** (Exhibit H).

## DISCUSSION

**I.     Malky's FDCPA Claim**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a violation under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt *or a person who has been the object of efforts to collect a consumer debt*, [] (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Healy v. Jzanus Ltd.*, No. 02-CV-1061 (CBA) (ASC), 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002) (emphasis added).

Caliber argues that Malky lacks standing to bring a FDCPA claim because she is not a "consumer" within the meaning of the statute. More specifically, Caliber argues that because Malky was only a signatory to the Mortgage and not the Note, she was not personally responsible for the repayment of a "debt" and therefore she is not a "consumer." That argument is meritless. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Caliber's HAMP program was indisputably designed to collect money, in the form of mortgage payments, from Malky, who was obligated to make those mortgage payments. This is evidenced by, among other things, the fact that (1) all three letters Caliber sent to Malky in connection with

the HAMP program provided that **"THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE,"** (2) Caliber did indeed collect three monthly payments from Malky on that debt, and (3) the HAMP Modification Agreement was intended to govern the repayment of both the Mortgage and the Loan, regardless of the fact that Malky was only a signatory to the Mortgage. Malky is clearly "a person who has been the object of efforts to collect a consumer debt" and a "consumer" within the meaning of the FDCPA. Accordingly, Caliber's motion to dismiss her FDCPA claim is denied.

## II. Malky's RESPA Claim

Congress enacted RESPA after it found that "significant reforms in the real estate settlement process are needed . . . ." 12 U.S.C. § 2601. RESPA is expected to result in "(1) [] more effective advance disclosure to home buyers and sellers of settlement costs; (2) [] the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) [] a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) [] significant reform and modernization of local recordkeeping of land title information." *Id.* To survive a motion to dismiss, a plaintiff must, "in addition to showing defendant's failure to comply with the [RESPA] provisions, identify damages that he or she sustained as a result of defendant's alleged violation(s)." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015). More specifically, to state a Section 2605 claim, a plaintiff "must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." *Id.* (quoting 12 U.S.C. 2605(f)(1)). "A plaintiff seeking actual damages

under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." *Id.*

Malky alleges that Caliber's HAMP modification is a form of loss mitigation within the meaning of RESPA and that Caliber violated regulation 12 C.F.R. 1024.41(c)(1)(ii), which provides that when a servicer receives a complete loss mitigation application, the servicer shall

> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

She alleges that Caliber violated this regulation when it provided "false or useless" written notice that her HAMP application was approved and that she suffered actual damages as a result.[2] (Am. Compl. ¶ 38-40). Similar to its argument with respect to the FDCPA, Caliber claims that because Malky "never had an obligation to pay any debt," she is not considered a "borrower" within the meaning of RESPA and therefore she does not have standing to bring this claim. As explained above, Malky clearly had an obligation to pay the debt that Caliber was seeking to collect. Further, Malky was named the "borrower" under the HAMP Modification Agreement and the Mortgage, which was one of two "Loan Documents" subject to the Modification Agreement. Accordingly, Malky is a "borrower" within the meaning of RESPA and Caliber's motion to dismiss her claim is denied.

---

[2] While Malky also requests statutory damages, she has not alleged that Caliber engaged in a "pattern or practice of noncompliance" with the requirements of Section 2605. 12 U.S.C. 2605(f)(1).

### III. Malky's Breach of Contract Claim

Malky's third claim against Caliber is for breach of the HAMP Modification Agreement. (Am. Compl. ¶ 43-46). Under New York law, "an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). Caliber argues that without Efrayim's signature on the Assumption and Release Agreement, which was required to finalize the HAMP modification, the Court cannot evaluate whether it breached the HAMP Modification Agreement. (ECF No. 25-1 at 13). The Court disagrees.

"The standard elements of a contract are an offer and an acceptance supported by consideration." *Tarowsky v. Am. Airlines, Inc.*, No. 01-CV-6992 (JG), 2002 WL 31956009, at *2 (E.D.N.Y. Dec. 31, 2002). Caliber's January 20 and June 30, 2017 letters offered Malky an opportunity to enter the HAMP loan modification program. The letters provided that to accept that offer, Malky need only make the required TPP payments and submit two signed copies of the Modification Agreement. (Exhibit C; Exhibit F). It was not until after Malky accepted the offer that Caliber added an additional requirement that Efrayim sign an Assumption and Release Agreement, which was in direct contradiction to its previous representation that all persons who signed the Loan Documents need not sign anything else if "the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree . . . ." (Exhibit G).

To the extent Caliber relies on the bullet point buried in the "Next Steps" portion of its first letter, providing that "[w]e reserve the right to revoke this offer or terminate the plan *following your acceptance* if we learn of information that would make you ineligible for the Trial Period Plan," that reliance is unavailing. Caliber was not permitted to revoke the offer after the offer was

8

accepted. Restatement (Second) of Contracts § 46 (1981) ("An irrevocable offer, or a revocable offer which has been duly accepted, cannot of course be revoked under this Section."); *Id.* § 42 ("Once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such."). Further, Caliber's claim that a contract was never formed is belied by its representation to the New York Supreme Court that "the case was settled by loan modification." (Exhibit M). Accordingly, Malky has sufficiently alleged that a contract was formed and that Caliber breached that contract.

## CONCLUSION

Accordingly, for the reasons set forth above, Caliber's motion to dismiss is **DENIED**.

SO ORDERED.

Dated: Brooklyn, New York
March 26, 2019

/s/
I. Leo Glasser                              U.S.D.J.